FORM 104 (10/06)

**FILED**

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) OCT 18 2010 |
|---|---|

**U.S. BANKRUPTCY COURT**
BY _____ DEPUTY

**PLAINTIFFS**
*LA TIERRA INTERIORS, INC., AND LA TIERRA INTERIORS SS, LLC*

**DEFENDANTS**
*IDIN SALABAGITSH AND FRANK GUZMAN, JR.*

**ATTORNEYS** (Firm Name, Address, and Telephone No.)
*THE LAW OFFICES OF MICHAEL R. NEVAREZ P.O. BOX 920786 EL PASO, TX 79902*

**ATTORNEYS** (If Known)
*J. TODD SOUTHERN*

**10-3040**

**PARTY** (Check One Box Only)
- ☐ Debtor
- ☐ U.S. Trustee/Bankruptcy Admin
- ☑ Creditor
- ☐ Other
- ☐ Trustee

**PARTY** (Check One Box Only)
- ☑ Debtor
- ☐ U.S. Trustee/Bankruptcy Admin
- ☐ Creditor
- ☐ Other
- ☐ Trustee

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☑ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☑ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability – §523(a)(1),(14),(14A) priority tax claims
- ☑ 62-Dischargeability – §523(a)(2), false pretenses, false representation, actual fraud
- ☑ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☑ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – reinstatement of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ *28,243.66* |

Other Relief Sought *INTEREST, ATTORNEY FEES, COSTS + NUMEROUS OTHER DAMAGES*

*30025889*
*10-3040*

FORM 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>*IDIN SAHABAKHSH* | | BANKRUPTCY CASE NO.<br>*10-31410-LMC* |
| DISTRICT IN WHICH CASE IS PENDING<br>*WESTERN* | DIVISIONAL OFFICE<br>*EL PASO* | NAME OF JUDGE<br>*LEIF M. CLARK* |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF<br>*LA TIERRA* | DEFENDANT<br>*SAHABAKHSH / GUZMAN* | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>*10-18-10* | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>*MICHAEL R. NEVAREZ, ATTORNEY* | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and the defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and in the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

FILED

OCT 1 8 2010

U.S. BANKRUPTCY COURT
BY _____ DEPUTY

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| IDIN SAFABAKHSH | § | CASE NO. 10-31410-LMC |
| 3433 TOUCHSTONE | § | CHAPTER 13 |
| EL PASO, TX 79936, | § | |
| | § | |
| DEBTOR(S). | § | |

| | | |
|---|---|---|
| LA TIERRA INTERIORS, INC., a New | § | |
| Mexico Corporation, and LA TIERRA | § | |
| INTERIORS SOLID SURFACES, LLC, | § | |
| a New Mexico Limited Liability | § | |
| Corporation, | § | **10-3040** |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | ADVERSARY NO. _____ |
| | § | |
| IDIN SAFABAKHSH and FRANK | § | |
| GUZMAN, JR., individually and | § | |
| collectively d/b/a WORLD OF FLOORING, | § | |
| and d/b/a WORLD OF GRANITE, Texas | § | |
| Proprietorships, et al., | § | |
| DEFENDANTS. | § | |

## ORIGINAL COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT, TO OBJECT TO DISCHARGE, AND TO RECOVER DAMAGES

**TO THE HONORABLE LEIF M. CLARK, U.S. BANKRUPTCY JUDGE:**

NOW COME, La Tierra Interiors, Inc. and La Tierra Interiors Solid Surfaces, LLC (hereinafter referred to jointly as either "Plaintiff" or "Plaintiffs"), by and through the undersigned counsel, and hereby file and assert this Original Complaint To Determine Dischargeability Of Debt, To Object To Discharge, And To Recover Damages (hereinafter referred to as "Original Complaint") against Mr. Idin Safabakhsh, a/k/a Idin A. Safabakhsh, a/k/a Idin S. Safabakhsh, a/k/a Idin S. Safa, a/k/a Dean Safa, and Mr. Fernando Guzman, Jr., a/k/a

Fernando Guzman, individually and collectively d/b/a World of Flooring, d/b/a World of

Granite, d/b/a World of Granite by Dashcar, d/b/a Dashcar, d/b/a Dashcar Co, d/b/a Dashcar

Company, d/b/a Dashlar, d/b/a Dashlar Co, d/b/a Dashlar Company, d/b/a Granite World, d/b/a

AAZIS, LLC, and d/b/a American Floor & Granite Company (hereinafter collectively referred to

either as "Defendant" or "Defendants", and/or "Debtor" or "Debtors") (with Plaintiffs and

Defendants jointly hereinafter referred to as "Parties"), and for cause(s) of action show unto the

Court the following:

### A.    CORE JURISDICTION

1.      This is a core proceeding over which this Court has jurisdiction pursuant to Title

28 U. S. C. § 157(b), in that the above-styled and numbered cause arises under Title 11, Chapter

13, of the United States Code, and is an adversary proceeding objecting to the dischargeability of

debt and the discharge of the debtor, and to recover damages and monies, or obtain an injunction,

declaratory judgment, or other equitable relief, pursuant to 11 U.S.C. § 523, 11 U.S.C. § 1328,

and Fed. R. Bankr.P. 4007 and 7001.

### B.    THE PARTIES AND SERVICE

2.      Plaintiff La Tierra Interiors, Inc. is a New Mexico Corporation, with its principal

place of business at 110 Dennys Road, Bernalillo, New Mexico 87004, and is a creditor and

claimant of the Defendants in this Chapter 13 case.

3.      Plaintiff La Tierra Interiors Solid Surfaces, LLC is a New Mexico Limited

Liability Corporation, with its principal place of business at 110 Dennys Road, Bernalillo, New

Mexico 87004, and is a creditor and claimant of the Defendants in this Chapter 13 case.

4.      Upon information and belief, the Defendant in this Chapter 13 case, Mr. Idin Safabakhsh, a/k/a Idin A. Safabakhsh, a/k/a Idin S. Safabakhsh, a/k/a Idin S. Safa, a/k/a Dean Safa, is an individual d/b/a World of Flooring, d/b/a World of Granite, d/b/a World of Granite by Dashcar, d/b/a Dashcar, d/b/a Dashcar Co, d/b/a Dashcar Company, d/b/a Dashlar, d/b/a Dashlar Co, d/b/a Dashlar Company, d/b/a Granite World, d/b/a AAZIS, LLC, and d/b/a American Floor & Granite Company, who, individually and collectively, resides at 3433 Touchstone, El Paso, Texas 79936, has made an appearance in this case, and therefore no service of process is necessary.

5.      Upon information and belief, the Defendant Mr. Fernando Guzman, Jr, a/k/a Fernando Guzman, is an individual d/b/a World of Flooring, d/b/a World of Granite, d/b/a World of Granite by Dashcar, d/b/a Dashcar, d/b/a Dashcar Co, d/b/a Dashcar Company, d/b/a Dashlar, d/b/a Dashlar Co, d/b/a Dashlar Company, d/b/a Granite World, d/b/a AAZIS, LLC, and d/b/a American Floor & Granite Company, who, individually and collectively, resides at 433 Lesa Lane, El Paso, Texas 79915.  Service of process upon the Defendant Mr. Fernando Guzman, Jr., individually and collectively, may be effected by service upon him at his place of residence at 433 Lesa LN, El Paso, Texas 79915, or at his principal place of business at 7200 Gateway East, El Paso, Texas 79915, or wherever said Defendant may be found.

## C.      JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction herein pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, 11 U.S.C. § 523, and 11 U.S.C. § 1328.

7.      The subject matter in controversy is within the jurisdictional limits of this Court.

8.     This Court has personal jurisdiction over the Parties because Defendants have their principal place of businesses or residences in the County of El Paso, Texas, and Plaintiffs have voluntarily submitted themselves to the jurisdiction of this Court.

9.     This Court has jurisdiction over this subject matter under Chapter 2 of the Texas Business & Commerce Code, "Sales", because the Plaintiffs' claim involves a transaction in goods, in that Defendants have failed and/or refused to pay for materials furnished, under a sworn account, and/or an oral and/or written contract.   Tex. Bus. & Comm. Code § 2.102.

10.     This Court has jurisdiction over this subject matter under Chapter 41 of the Texas Civil Practice & Remedies Code, "Damages", because of the theft, fraud, malice and/or gross negligence of the Defendants, in knowingly and intentionally failing and/or refusing to pay for or return the materials furnished, under a sworn account, and/or an oral and/or written contract. Tex. Civ. Prac. & Rem. Code § 41.001.

11.     This Court has jurisdiction over this subject matter under Chapter 134 of the Texas Civil Practice & Remedies Code, "Texas Theft Liability Act", because Defendants unlawfully appropriated and converted Plaintiffs' property through theft, and/or by theft by check, by knowingly and intentionally failing and/or refusing to pay for or return the materials furnished, under a sworn account, and/or an oral and/or written contract. Tex. Civ. Prac. & Rem. Code § 134.001.

12.     This Court has jurisdiction over this subject matter under Chapter 38 of the Texas Civil Practice & Remedies Code, "Attorneys Fees", because the Plaintiffs' claim is for materials furnished, under a sworn account, and/or an oral and/or written contract. Tex. Civ. Prac. & Rem. Code § 38.001.

13.     Venue in the United States Bankruptcy Court for the Western District Of Texas, El Paso Division, is proper pursuant to 28 U.S.C. § 1409, "Venue Of Proceedings Arising Under Title 11 Or Arising In Or Related To Cases Under Title 11", as each Defendant resides or has its principal place of residence in El Paso County, Texas.

### D.  FACTUAL BACKGROUND

14.     The Plaintiffs are commercial sellers and fabricators of natural stone materials (granite, marble, travertine, soapstone, etc.) operating from their principal place of business at 110 Dennys Road, Bernalillo, New Mexico 87004.

15.     Upon information and belief, the individual Defendant, Mr. Fernando Guzman, Jr, is founder of a proprietorship, operating since the year 2006 under the assumed name of "World of Flooring", and located at 7200 Gateway East, El Paso, Texas 79915.

16.     Upon information and belief, the individual Defendant, Mr. Idin Safabakhsh, is also founder of a proprietorship, also operating since the year 2006, also under the assumed name of "World of Flooring", and also located at 7200 Gateway East, El Paso, Texas 79915.

17.     Upon information and belief, since the year 2006, and during the times in question, the individual Defendants jointly were in the commercial business of buying and selling natural stone materials, while jointly operating under the assumed name of "World of Flooring", under the joint direction and control of, and in general partnership with, the individual Defendants, Mr. Idin Safabakhsh and Mr. Fernando Guzman, Jr.

18.     Upon information and belief, since the year 2006, and during the times in question, the individual Defendants were also jointly operating under numerous other assumed and fictitious names, including but not limited to d/b/a World of Granite, d/b/a World of Granite

by Dashcar, d/b/a Dashcar, d/b/a Dashcar Co, d/b/a Dashcar Company, d/b/a Dashlar, d/b/a

Dashlar Co, d/b/a Dashlar Company, d/b/a Granite World, d/b/a AAZIS, LLC, and d/b/a

American Floor & Granite Company.

19.     In the usual course of business, during the years of 2006-2009, the Defendants

contacted the Plaintiffs by telephone for the purposes of buying valuable natural stone materials,

identifying themselves individually and collectively as "World of Flooring" and/or "World of

Granite".

20.     As a result, in telephone discussions during the years 2006-2009, the Defendants

herein entered into oral contracts and agreements to purchase valuable natural stone materials,

the payment of which was guaranteed by the individual Defendant herein, Mr. Idin Safabakhsh,

and was to be tendered upon delivery, and/or on commercial account with payment upon receipt

of an invoice from the Plaintiffs to the Defendants.

21.     In accordance with said telephone discussions, and pursuant to the

aforementioned oral promise(s), agreement(s), contract(s) and guarantee(s) to pay that were

made to the Plaintiffs by the Defendants herein, the Plaintiffs agreed to sell their natural stone

materials to the Defendants.

22.     Accordingly, during the year 2006, and up until March 22, 2007, Defendants

tendered numerous payments in the total amount of $20,388.96, for numerous deliveries of

valuable natural stone materials, and/or upon receipt of numerous invoices from the Plaintiffs to

the Defendants.

23.     On or about March 22, 2007, Plaintiffs sold and delivered Twelve (12) valuable

natural stone materials to the Defendants, valued in the amount of **$12,187.74**, under Invoice No.

1116, dated March 22, 2007. (See Plaintiffs' Exhibit A hereto, which is hereby incorporated by reference, attaching copies of said Invoice No. 1116)

24.     However, Defendants were unable to pay Plaintiffs the amount of **$12,187.74**, after delivery of said Twelve (12) valuable natural stone materials, and/or on upon receipt of said Invoice No. 1116 from the Plaintiffs to the Defendants.

25.     Consequently, the Defendants verbally agreed to retain possession of said Twelve (12) valuable natural stone materials, for the specific purpose of reselling said Twelve (12) valuable natural stone materials, on the condition that the resale by the Defendants of said Twelve (12) valuable natural stone materials would be achieved and fulfilled, but with the further understanding that said Twelve (12) valuable natural stone materials would be held in trust by the Defendants, and be returned to the Plaintiffs, in the event said resale by the Defendants of the Twelve (12) valuable natural stone materials would not be achieved and/or fulfilled.

26.     Furthermore, since the Twelve (12) valuable natural stone materials were to be held in trust by the Defendants, Plaintiffs verbally agreed to extend additional credit to the Defendants, and thereby allow the Defendants until April of 2008, which is a full year after delivery, in which said resale of the Twelve (12) valuable natural stone materials could be achieved and/or fulfilled by the Defendants.

27.     Accordingly, relying on said agreement to extend the requested credit to the Defendants, Plaintiffs continued to sell and deliver additional valuable natural stone materials to the Defendants.

28.     However, upon information and belief, Defendants apparently never intended or attempted to pay the Plaintiffs the amount of **$12,187.74**, for said Twelve (12) valuable natural stone materials, despite the negotiation of subject trust agreement.

29.     Instead, upon information and belief, Defendants engaged in a systematic scheme designed to defraud the Plaintiffs out of additional valuable natural stone materials.

30.     Specifically, Defendants entered into additional oral contracts and agreements to purchase additional valuable natural stone materials, in the total amount of **$11,909.00**, including but not limited to the valuable natural stone materials reflected in the following Invoices issued to the Defendants:

(a)     Invoice No. 1134, dated March 26, 2007, in the amount of **$4,494.79**;

(b)     Invoice No. 1271, dated May 9, 2007, in the amount of **$4,090.45**; and,

(c)     Invoice No. 1290, dated May 5, 2007, in the amount of **$3,585.54**.

(See Plaintiffs' Exhibit A hereto, which is hereby incorporated by reference, attaching copies of said Invoices)

31.     Defendants accepted each and every item of natural stone material delivered by the Plaintiffs under Invoice Nos. 1134, 1271, and 1290, and thereby became bound to pay Plaintiffs the designated and previously agreed upon price in the total amount of **$11,909.00**, which was the reasonable, usual, and customary price for such materials.

32.     However, Defendants did not comply with their oral promise(s), agreement(s), contract(s) and guarantee(s) to pay upon delivery, and/or upon receipt of an invoice.

33.     Defendants instead delivered to the Plaintiffs **Three (3) Bad Checks** that were dishonored and returned for "NOT SUFFICIENT FUNDS" (NSF), by the banking institution

utilized by the Defendants. The total amount of the dishonored and returned NSF bad checks of the Defendants is **$11,909.00**, as follows:

    (a)    Bad check No. 1142 in the amount of **$4,494.79**, dated March 29, 2007, pertaining to Invoice No. 1134;

    (b)    Bad check No. 1126 in the amount of **$4,090.45**, dated May 11, 2007, pertaining to Invoice No. 1271; and,

    (c)    Bad check No. 1127 in the amount of **$3,323.76**, dated May 17, 2007, pertaining to Invoice No. 1290.

(See Plaintiffs' Exhibit B attached hereto, which is hereby incorporated by reference, attaching copies of the foregoing dishonored Bad Checks Nos. 1142, 1126, and 1127)

34.    Plaintiffs provided the Defendants with actual, repeated, verbal notice of the dishonor of said bad checks, repeatedly demanding immediate payment in full, and Defendants responded with repeated assurances and representations that they fully intended to pay and/or reimburse the Plaintiffs for all dishonored and returned bad checks.

35.    Then, on or about September 29, 2008, Defendants entered into an additional oral contract and agreement to purchase additional valuable natural stone materials, as reflected in Invoice No. 2873, dated September 29, 2008, in the total amount of **$4,297.52**. (See Plaintiffs' Exhibit A hereto, which is hereby incorporated by reference, attaching copies of said Invoice No. 2873)

36.    Defendants, however, provided the Plaintiffs with a **Fourth Bad Check** that was dishonored and returned for "NOT SUFFICIENT FUNDS" (NSF), by the banking institution utilized by the Defendants, in the total amount of **$4,297.52**. (See Plaintiffs' Exhibit B attached

hereto, which is hereby incorporated by reference, attaching copies of Bad Check No. 1912 in

the amount of **$4,297.52**, dated October 1, 2008, and pertaining to Invoice No. 2873)

37.    Accordingly, Plaintiffs once again demanded from the Defendants immediate

payment in full and reimbursement for all dishonored and returned bad checks.

38.    However, Defendants only responded with additional, verbal assurances and

representations that they fully intended to pay and/or reimburse the Plaintiffs for all dishonored

and returned bad checks, and provided the Plaintiffs with no such payment or reimbursement.

39.    Consequently, on or about November 20, 2008, Plaintiffs' co-owner, Mr. Bruce

Bumkins, and Mr. Harry Weil, CPA, traveled from Bernalillo, New Mexico to El Paso, Texas, in

order to meet with the Defendants and either (a) obtain full and complete payment for all

dishonored and returned bad checks, or (b) retrieve and recover all valuable natural stone

materials delivered by the Plaintiffs to the Defendants, particularly the Twelve (12) valuable

natural stone materials relating to Invoice No. 1116 that were being held in trust by the

Defendants.

40.    Specifically, as of November 20, 2008, the Defendants owed the Plaintiffs the

total amount of **$28,243.66**, including (a) the amount of **$16,206.52**, for the four (4) dishonored

and returned NSF bad checks of the Defendants, and (b) the amount of **$12,187.74**, for the

Twelve (12) valuable natural stone materials relating to Invoice No. 1116 that were being held in

trust by the Defendants.

41.    On or about November 20, 2008, Plaintiffs' co-owner, Mr. Bruce Bumkins,

communicated via telephone with the individual Defendant, Mr. Idin Safabakhsh, in order to set

up a meeting.  Mr. Bumkins informed Defendant Safabakhsh via telephone that he was in El

Paso, Texas, either to (a) obtain full and complete payment for all dishonored and returned bad

checks, or (b) retrieve and recover all valuable natural stone materials delivered by the Plaintiffs to the Defendants, particularly the Twelve (12) valuable natural stone materials relating to Invoice No. 1116 that were being held in trust by the Defendants.

42.     Defendant, Mr. Idin Safabakhsh, then informed said representatives of the Plaintiff via telephone that he was not at the Defendants' place of business, but would be at the Defendants' place of business before close of business, in order to deliver to the Plaintiffs a valid check for a substantial, partial payment, in exchange for an extension and renewal of credit, and in order to retain the valuable natural stone materials that were being held in trust by the Defendants.

43.     Plaintiffs' representatives arrived at the Defendants' place of business, but Defendant Safabakhsh was nowhere to be found.

44.     Plaintiffs' representative, Mr. Bumkins, then telephoned Defendant Safabakhsh several times, but Defendant Safabakhsh was unwilling and/or unable to answer.

45.     After several unsuccessful telephonic attempts, Plaintiffs' representative, Mr. Bumkins, left a message on Defendant Safabakhsh's telephone voice mail, advising that (a) Plaintiffs' representatives were at the Defendants' place of business before close of business, as previously arranged, with a flat bed truck ready to retrieve and recover all valuable natural stone materials delivered by the Plaintiffs to the Defendants, and (b) they would be there again the following day.

46.     Defendant Safabakhsh then telephoned Plaintiffs' representative, Mr. Bumkins, after close of business, claiming that he could not be at the Defendants' place of business as previously agreed to, but was willing to provide the Plaintiffs a credit card number for a substantial, partial payment, in exchange for an extension and renewal of credit, and in order to

retain the valuable natural stone materials that were being held in trust by the Defendants. As such, Defendant Safabakhsh explained to Mr. Bumkins via telephone, it would not be necessary for Plaintiffs' representative to remain in El Paso, Texas, and Plaintiffs' representative would then be free to return to Bernalillo, NM.

47.     Plaintiffs' representative, Mr. Bumkins, accepted Defendant Safabakhsh's offer, and Defendant Safabakhsh's credit card number, and in reliance thereon, departed Defendants' business facility in El Paso, Texas.

48.     The following business day, Plaintiffs attempted to charge Defendant Safabakhsh's credit card number, but were declined by the commercial credit card merchant.

49.     Plaintiffs once again demanded from the Defendants immediate payment in full and reimbursement for all dishonored and returned bad checks, or the return all valuable natural stone materials delivered by the Plaintiffs to the Defendants.

50.     Defendants instead delivered to the Plaintiffs **Two (2) Bad Checks** that were dishonored and returned for "NOT SUFFICIENT FUNDS" (NSF), by the banking institution utilized by the Defendants. The total amount of these dishonored and returned NSF bad checks of the Defendants is **$8,297.52**, as follows:

(a)  Bad check (Unnumbered) in the amount of **$4,297.52**, dated January 2, 2009, pertaining to Invoice No. 2873; and,

(b)  Bad check (Unnumbered) in the amount of **$4,000.00**, dated January 14, 2009, pertaining to Invoice No. 1116.

51.     Consequently, on February 6, 2009, Plaintiffs tendered a formal, written demand in yet another attempt to collect the unpaid balance of **$12,037.14** due on Invoice No. 1116. (See Plaintiffs' Exhibit C attached hereto, which is hereby incorporated by reference)

52.     However, Defendants failed and/or refused to make full payment on the account, or on the dishonored and returned bad checks, and as a result the Defendants defaulted on their oral promise(s), agreement(s), contract(s) and guarantee(s) to pay the Plaintiffs for the delivered materials.

53.     As a result, in March of 2009, Plaintiffs dispatched a flat bed truck to Defendants' business facility to retrieve and recover all valuable natural stone materials delivered by the Plaintiffs to the Defendants, including the Twelve (12) valuable natural stone materials that were being held in trust by the Defendants.

54.     Defendants, however, failed and/or refused to produce said valuable natural stone materials, claiming that said valuable natural stone materials no longer were in Defendants' possession.

55.     On April 6, 2009, Plaintiffs tendered another formal, written demand in yet another attempt to collect the unpaid balance of **$12,037.14** due on Invoice No. 1116.   (See Plaintiffs' Exhibit D attached hereto, which is hereby incorporated by reference)

56.     Furthermore, when the Plaintiffs later demanded the return of all of the materials in question, due to Defendants' nonpayment, the Defendants failed and/or refused to return to the Plaintiffs said materials as requested.

57.     Therefore, Defendants did thereby fraudulently and maliciously assume and exercise dominion and control over the materials, as unlawful and unauthorized conversion, to the exclusion of and inconsistent with the Plaintiffs' legal rights to the materials.  The unlawful

actions of the Defendants are thus tantamount to **Thirty Three (33)** appropriations of property by theft.

58.     Perhaps more importantly, by delivering **Six (6) Bad Checks** in the total amount of **$24,504.04**, and by exercising unlawful and unauthorized conversion and theft over the materials in question, the Defendants knowingly and intentionally engaged in a systematic scheme designed to fraudulently induce the Plaintiffs to deliver materials to the Defendants, knowing that they would later fail and/or refuse to comply with Plaintiffs' demands for payment. The unlawful actions of the Defendants are thus tantamount to **Thirty Three (33)** appropriations of property by fraud, and/or **Six (6)** appropriations of property by theft by check.

59.     The principal outstanding balance still due the Plaintiffs herein on the open, commercial account is **$28,243.66**, after all just and lawful offsets, payments, and credits have been allowed, as shown on Plaintiffs' statement of account.  (See Plaintiffs' Exhibit E attached hereto, which is hereby incorporated by reference, attaching Plaintiffs' Affidavit as Verification for Suit on Sworn Account)   Plaintiffs' Affidavit as Verification for Suit on Sworn Account accurately depicts and represents a transaction or series of transactions for which a systematic record has been kept.  (See Plaintiffs' Exhibit E attached hereto, which is hereby incorporated by reference)

60.     Defendants' default and failure and/or refusal to pay the outstanding amount due, and Defendants' failure and/or refusal to return subject materials, along with Defendants' fraudulent conduct and thefts, made it necessary for Plaintiffs to employ the undersigned attorney.

---

## E.  WRITTEN NOTICE

61.    By letter dated December 26, 2009, the Plaintiffs served upon the Defendants

herein a formal written Demand for payment of the unpaid balance of **$12,037.14** due on Invoice

No. 1116, not including attorneys fees and costs, by letter addressed to the Defendants herein,

World of Flooring/World of Granite, c/o the residence of Defendant Mr. Idin Safabakhsh, via

United States Postal Service, Certified Mail, Return Receipt Requested.  (See Plaintiffs' Exhibit

F hereto, for a copy of Plaintiffs' "Demand Letter", which is hereby incorporated by reference)

62.    However, Defendants failed and/or refused to accept delivery of said written

Demand Letter, even though said Demand Letter was properly addressed to the residence of

Defendant Mr. Idin Safabakhsh.  (See Plaintiffs' Exhibit F hereto, for a copy of the United States

Postal Service "Unclaimed" notice concerning Plaintiffs' "Demand Letter", which is hereby

incorporated by reference)

63.    Therefore, by letter dated March 1, 2010, the Plaintiffs served upon the

Defendants herein another formal written Demand for payment of the unpaid balance of

**$12,037.14** due on Invoice No. 1116, not including attorneys fees and costs, by letter addressed

to the Defendants herein, c/o Mr. Fernando Guzman, Jr., via United States Postal Service,

Certified Mail, Return Receipt Requested.  (See Plaintiffs' Exhibit G hereto, for a copy of

Plaintiffs' second "Demand Letter", which is hereby incorporated by reference)

64.    Similarly, by letter dated March 3, 2010, the Plaintiffs served upon the

Defendants herein a third formal written Demand for payment of the unpaid balance of

**$12,037.14** due on Invoice No. 1116, not including attorneys fees and costs, by letter addressed

to the Defendants herein, World of Flooring/World of Granite, c/o the residence of Defendant

Mr. Idin Safabakhsh, via hand delivery by a professional process server.  (See Plaintiffs' Exhibit

H hereto, for a copy of Plaintiffs' third "Demand Letter", which is hereby incorporated by reference)

65.     Defendant Mr. Idin Safabakhsh, however, failed and/or refused to respond to Plaintiffs' Demand Letters, while Defendant Mr. Fernando Guzman, Jr. refused to accept any responsibility for said outstanding debt.

66.     Accordingly, by letter dated April 3, 2010, addressed to the Defendants herein, c/o the residence of Defendant Mr. Idin Safabakhsh, Plaintiffs issued a "Final Warning Letter" to the Defendants, in an explicit attempt to amicably settle subject outstanding debt, and thereby avoid the instant litigation, by once again requesting payment of the unpaid balance of **$12,037.14** due on Invoice No. 1116, not including attorneys fees and costs.  Said "Final Warning Letter" was served upon the Defendants herein via United States Postal Service Priority Mail, Delivery Confirmation Requested.  (See Plaintiffs' Exhibit I hereto, which is hereby incorporated by reference)

67.     Similarly, by letter dated April 3, 2010, addressed to the Defendants herein, c/o the residence of Defendant Mr. Fernando Guzman, Jr., Plaintiffs issued a "Final Warning Letter" to the Defendants, in an explicit attempt to amicably settle subject outstanding debt, and thereby avoid the instant litigation, by once again requesting payment of the unpaid balance of **$12,037.14** due on Invoice No. 1116, not including attorneys fees and costs.  Said "Final Warning Letter" was served upon the Defendants herein via United States Postal Service Priority Mail, Delivery Confirmation Requested.  (See Plaintiffs' Exhibit J hereto, which is hereby incorporated by reference)

68.     Defendants, however, failed and/or refused to respond to Plaintiffs' "Final Warning Letter".

69.     Instead, approximately three (3) months later, on or about July 5, 2010, the above named Debtor Defendant, Mr. Idin Safabakhsh, filed a voluntary petition for relief under Chapter 13 of Title 11, United States Code.

70.     Despite Plaintiffs' timely and repeated attempts to collect the outstanding amount due, subject debt has gone unpaid for more than thirty (30) days, and to this day remains unpaid, ignored and neglected.

71.     Defendants' willful neglect and refusal to pay the outstanding amount due, or to return subject materials, coupled with Defendants' numerous frauds and breaches of trust, and thefts and conversions, thereby knowingly and intentionally causing a financial loss and damage to the Plaintiffs herein, made it necessary for Plaintiffs' attorney to file this Original Complaint.

72.     On or about September 24, 2010, the above named Plaintiffs, as creditors and claimants of the Debtor Defendant, filed a Proof of Claim in the approximate amount of Twenty-Eight Thousand and Two Hundred Forty Three Dollars (**$28,243.66**), not including attorneys fees and costs and interest.

73.     Plaintiffs' formal written "Demand Letter" and "Final Warning Letter" were all served upon the Defendants more than thirty (30) days prior to the filing of this Original Complaint.

### F.  PARTICIPATORY AND VICARIOUS LIABILITY

74.     **Proprietorship Liability.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are jointly and severally liable because at all relevant times herein the Defendants constituted a single business enterprise, operating unlawfully under numerous proprietorships,

with the individual Defendant herein, Mr. Idin Safabakhsh, and with the individual Defendant

herein, Mr. Ferndando Guzman, Jr., as joint owners and founders of subject proprietorships.

Specifically, upon information and belief, subject individual Defendants, Mssrs. Safabakhsh and

Guzman, are both subject to unlimited personal liability to the claims and obligations of their

numerous businesses, as are the business assets of the numerous proprietorships, because the

Defendants' businesses were unlawfully (a) used as a sham to perpetrate a fraud, (b) organized

and operated as a mere tool or business conduit, (c) formed and maintained to evade legal

obligations, (d) formed and maintained to circumvent the laws of the State of Texas, (e) formed

and maintained to hide a crime or to justify a wrong, (f) formed and maintained with inadequate

capitalization for their businesses, (g) formed and maintained with insufficient assets to meet

their debts and obligations, (h) formed and maintained while ignoring business formalities, and

(i) left unable to satisfy claims and debts due to the appropriation of the assets of the businesses

by the individual Defendants herein.  Since all Defendants were acting within the scope of that

unlawful single business enterprise, all Defendants are jointly and severally liable for the

outstanding debts and obligations of the numerous proprietorships.

  75. **Joint Enterprise Liability.**  Upon information and belief, and incorporating the

allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the

Defendants are jointly and severally liable because at all relevant times herein the Defendants

were engaged in an unlawful joint enterprise.  Specifically, upon information and belief,

Defendants unlawfully (a) had an agreement, (b) had a common purpose, (c) had a pecuniary

interest in that common purpose, (d) had an equal right to direct and control the enterprise, (e)

created new and related entities to avoid liabilities, (f) transferred and comingled assets among

those entities to avoid liabilities, and (g) appropriated the assets of the enterprise, leaving it

unable to satisfy outstanding debts and/or claims. Since all Defendants were acting within the scope of that unlawful joint enterprise, all Defendants are jointly and severally liable herein.

76. **Partnership Liability.** Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are jointly and severally liable because at all relevant times herein the Defendants operated their businesses as a partnership. Specifically, upon information and belief, all Defendants (a) shared and/or had a right to share in the profits of the businesses, (b) expressed and/or demonstrated an intent to be partners in the businesses, (c) participated and/or had a right to participate in control of the businesses, (d) shared and/or agreed to share in the losses of and/or liability for claims against the businesses, (e) contributed and/or agreed to contribute money and/or property to the businesses, (f) co-owned property, (g) shared and/or had a right to share gross returns and/or revenues of the businesses, (h) jointly acted in the ordinary course of businesses and/or with the authority of the partnership, and (i) misapplied the materials in question herein while in the partnership's custody. Since all Defendants were acting within the scope of that unlawful partnership, all Defendants are jointly and severally liable herein.

77. **Assisting or Encouraging.** Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are jointly and severally liable because at all relevant times herein the Defendants assisted and/or encouraged each other in the tort and/or wrongful and fraudulent contractual act of avoiding and evading full and complete payment to the Plaintiffs, knowing and intending that their conduct constituted such a tort and/or wrongful act against the Plaintiffs. Since the assistance and/or encouragement of all the Defendants was a substantial factor in causing the tort

and/or wrongful act herein against the Plaintiffs, all Defendants are jointly and severally liable herein.

78.     **Assisting & Participating.** Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are jointly and severally liable because at all relevant times herein the Defendants substantially assisted each other, and participated with each other, in causing the tort and/or wrongful and fraudulent contractual act of avoiding and evading full and complete payment to the Plaintiffs.   Since the assistance and/or participation of all the Defendants was a substantial factor in causing the tort and/or wrongful act herein against the Plaintiffs, all Defendants are jointly and severally liable herein.

79.     **Concert of Action.** Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are jointly and severally liable because at all relevant times herein the Defendants agreed to assist each other in concert, and participate with each other in concert, thereby causing the tort and/or wrongful and fraudulent contractual act of avoiding and evading full and complete payment to the Plaintiffs.   Since the acts of the Defendants in carrying out the agreement in concert with each other was a substantial factor in causing the tort and/or wrongful act herein against the Plaintiffs, all Defendants are jointly and severally liable herein.

80.     **Conspiracy.** Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are jointly and severally liable because at all relevant times herein the Defendants, in combination with each other, acted so as to accomplish the unlawful and fraudulent object of their agreement. Specifically, Defendants knowingly and intentionally agreed to conspire to cause the tort and/or

wrongful and fraudulent contractual act of avoiding and evading full and complete payment to the Plaintiffs, thereby proximately causing economic injury to the Plaintiffs. Since the acts of the Defendants in carrying out the agreement in conspiracy with each other was a substantial factor in causing the tort and/or wrongful act herein against the Plaintiffs, all Defendants are jointly and severally liable herein.

81. **Agency.** Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are jointly and severally liable because at all relevant times herein the Defendants acted as agents of each other. Specifically, Defendants (a) had intentionally granted each other the authority to act as agents on behalf of each principal Defendant, (b) had intentionally allowed each other to believe that each Defendant had the authority to act as agents on behalf of each principal Defendant, and (c) had, through lack of due care, allowed each Defendant agent to believe that actions taken on behalf of each principal Defendant were authorized. Since the Defendants were acting as agents within the scope of the authority granted by each other Defendant as principals, all Defendants are jointly and severally liable herein.

82. **Apparent Agency.** Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are jointly and severally liable because at all relevant times herein the Defendants acted with apparent authority to act as agents for each other. Specifically, Defendants (a) affirmatively held each other out as an agent having apparent authority to act on each other's behalf, (b) knowingly permitted the appearance that each such apparent agent was authorized to act on behalf of each principal Defendant, and (c) acted with such a lack of ordinary care as to clothe each such apparent agent with the indicia of authority to act on behalf of each principal

Defendant.  Since the conduct of the Defendants caused Plaintiffs to reasonably believe that each

such Defendant had apparent authority to act on behalf of each principal Defendant, and since

Plaintiffs justifiably relied upon that apparent agent authority, all Defendants are jointly and

severally liable herein.

83.    **Respondeat Superior.**  Upon information and belief, and incorporating the

allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the

Defendants are jointly and severally liable because at all relevant times herein the actions of the

Defendants were authorized within their employer-employee relationship.  Specifically, the acts

of the individual Defendant(s), as employee(s), performed while in the employment of the

businesses entities of the Defendants, as employer(s), was to (a) further the unlawful and

fraudulent businesses of the Defendants, and (b) accomplish the unlawful and fraudulent

objective of the hired employee(s), all of which was within the course and scope of that

employment, and/or within the authority delegated to the hired employee(s).  Since the

individual Defendants were acting as employee(s) of the business entities of the Defendants,

while conducting unlawful and fraudulent business activities, within the course and scope of that

employment, and/or within the authority delegated to the employee(s), all Defendants are jointly

and severally liable herein.

84.    **Ratification.**  Upon information and belief, and incorporating the allegations

contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are

jointly and severally liable because at all relevant times herein the Defendants ratified the

unlawful and fraudulent actions of each other.  Specifically, the Defendants were acting on

behalf of each other, and because each of the Defendants was fully aware of the unlawful and

fraudulent acts of the other Defendants, and approved the acts of each other by accepting subject

unlawful and fraudulent transactions, all Defendants acted with the intent to validate and thereby ratify said transactions. Since the Defendants ratified the unlawful and fraudulent actions of each other, all Defendants are jointly and severally liable herein.

85.     **Nondelegable Duty.** Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are jointly and severally liable because at all relevant times herein the Defendants owed Plaintiffs a nondelegable duty to act in good faith, with honesty and fair dealing, and refrain from unlawful and fraudulent acts, which the Defendants breached when Defendants wrongfully failed and/or refused to pay the Plaintiffs for subject transactions. Since the Defendants failed and/or refused to comply with their nondelegable duty to act in good faith, with honesty and fair dealing, and refrain from unlawful and fraudulent acts, all Defendants are jointly and severally liable herein.

86.     **Vice-Principal.** Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the Defendants are jointly and severally liable because at all relevant times herein the unlawful and fraudulent acts of each of the Defendants were directly related to the businesses of the Defendants, such that the unlawful and fraudulent acts of each of the Defendants were the unlawful and fraudulent acts of each of the other Defendants. Since the Defendants acted as vice principals of each other in wrongfully failing and/or refusing to pay the Plaintiffs for subject transaction(s), all Defendants are jointly and severally liable herein.

87.     **Director/Officer/Owner Liability.** Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the business Defendant(s) herein had their right to do business within Texas

forfeited, and therefore each director, officer and owner of the businesses is jointly and severally liable for the debts of the businesses.

## G.    OBJECTION TO DISCHARGEABILITY OF DEBT

88.    **False Pretenses, False Representation or Actual Fraud.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the outstanding debt owed by the Defendants to Plaintiffs is non-dischargeable under § 523(a)(2) of the Bankruptcy Code, because the outstanding debt of **$28,243.66** was for money, property, and services, and the extension and renewal of credit, obtained by the Defendants through the Defendants' false pretenses, false representations or actual fraud.  11 U.S.C. § 523(a)(2)(A).

89.    **Fraud or Larceny.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the outstanding debt owed by the Defendants to Plaintiffs is non-dischargeable under § 523(a)(4) of the Bankruptcy Code, because the outstanding debt of **$28,243.66** was for money, property, and services, and the extension and renewal of credit, obtained by the Defendants through the Defendants' fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. 11 U.S.C. § 523(a)(4).

90.    **Willful and Malicious Injury.**  Upon information and belief, and incorporating the allegations contained in the foregoing paragraphs by reference as if fully set forth herein, the outstanding debt owed by the Defendants to Plaintiffs is non-dischargeable under § 523(a)(6) of the Bankruptcy Code, because the outstanding debt of **$28,243.66** was for money, property, and

services, and the extension and renewal of credit, obtained by the Defendants through the

Defendants' willful and malicious injury to the Plaintiffs herein.  11 U.S.C. § 523(a)(6).

## H.    OBJECTION TO DISCHARGE OF DEBTOR

91.    Upon information and belief, and incorporating the allegations contained in the

foregoing paragraphs by reference as if fully set forth herein, the action of the Debtor in filing the

petition was not in good faith, considering the Debtor's prepetition misconduct and dishonesty of

intention, fundamental fairness, and the totality of the circumstances, and bars the Debtor's

discharge under 11 U.S.C. § §1325(a)(1), (3), and (7).

92.    Upon information and belief, and incorporating the allegations contained in the

foregoing paragraphs by reference as if fully set forth herein, the action of the Debtor in filing

misstatements and omissions in the Debtor's Schedules constitute the making of a false oath in a

case under Title 11, United States Code, and bars the Debtor's discharge under 11 U.S.C. §

§1325(a)(1), (3), and (7).

93.    Upon information and belief, and incorporating the allegations contained in the

foregoing paragraphs by reference as if fully set forth herein, the action of the Debtor in filing false

statements under oath and/or in open court constitute the making of a false oath, and bars the

Debtor's discharge under 11 U.S.C. § §1325(a)(1), (3), and (7).

## I.    THE CAUSES OF ACTION

94.    **Count 1 - Action on an Oral Debt.**  Plaintiffs file this Action on an Oral Debt on

the basis that Defendants breached and failed to comply with their valid and enforceable oral

promise(s), agreement(s) and contract(s) to pay for their purchase of subject materials, which was performable within one (1) year, since the payment of which was promised to be tendered upon delivery, and/or upon receipt of an invoice from the Plaintiffs to the Defendants. As a result of Defendants' failure and/or refusal to pay in accordance with their oral promise(s), agreement(s) and contract(s), Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

95. **Count 2 - Action for Breach of Contract.** In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action for Breach of Contract on the basis that Defendants breached and wholly failed to comply with their valid and enforceable oral contract and agreement, which was reached by the Parties, through offer and acceptance, and after a meeting of the minds, with the Parties thereby consenting as to the terms, including payment by the Defendants for their purchase of subject materials, the payment of which was agreed to be tendered upon delivery, and/or upon receipt of an invoice from the Plaintiffs to the Defendants, and which was thus performable within one (1) year. As a result of Defendants' breach of contract, Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

96. **Count 3 - Action for Quantum Meruit.** In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action for Quantum Meruit on the basis that Defendants have been unjustly enriched, without compensating the Plaintiffs, through the wrongful conduct of the Defendants, in failing and/or refusing to pay for their purchase of subject valuable materials, which the Plaintiffs furnished and delivered to the Defendants, who had sought to be charged for the materials, and who in fact accepted said materials, knowing that

the Plaintiffs in providing said materials expected to be paid by the Defendants, despite the absence of a written agreement and/or contract between the parties herein.  As a result of Defendants' unjust enrichment, Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

97.    **Count 4 - Action for Promissory Estoppel As A Claim.**  In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action for Promissory Estoppel as a Claim on the basis that Defendants have failed and/or refused to keep and comply with their enforceable and binding promise(s) to pay for subject materials, which was justifiably and reasonably relied upon by the Plaintiffs, to the substantial detriment of the Plaintiffs, given that it was reasonably foreseeable by the Defendants that the Plaintiffs would rely on said promise(s) of the Defendants, and because Defendants knew, or reasonably should have known, that Plaintiffs would rely on the promise(s) of the Defendants.   As a result of Defendants' failure(s) and/or refusal to comply with their enforceable and binding promise(s), Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

98.    **Count 5 - Suit on Sworn Account.**  In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Suit on Sworn Account on the basis that Defendants failed and/or refused to pay for subject materials, which were purchased by and delivered to the Defendants on an open commercial account, and in a just and true amount, as designated by the agreement of the parties, and by the usual, customary, and reasonable price for the material.  As a result of Defendants' failure and/or refusal to pay the amount due on account, Plaintiffs have

suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

99.    **Count 6 – Action for Money Had and Received.**  In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action for Money Had and Received on the basis that the Defendants hold money that, in equity and good conscience, belongs to the Plaintiffs, in that the Defendants have failed and/or refused to pay for their purchase of subject materials, the payment of which was promised to be tendered upon delivery, and/or upon receipt of an invoice from the Plaintiffs to the Defendants.  As a result of Defendants' failure and/or refusal to pay, Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

100.    **Count 7 - Action for Conversion.**  In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action for Conversion on the basis that Defendants engaged in conversion of property, by failing and/or refusing to comply with the Plaintiffs' demand(s) for the return of all of the materials in question, thereby assuming and exercising dominion and control over the materials, in an unlawful and unauthorized manner, and to the exclusion of and inconsistent with, and in clear repudiation to the Plaintiffs' legal rights to the materials.  As a result of Defendants' unlawful conversion of property, Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

101.    **Count 8 - Action for Fraud by Misrepresentation and/or Inducement.**  In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action for Fraud by Misrepresentation and/or Inducement on the basis that Defendants engaged in false, misleading,

and fraudulent representations and conduct, by making promise(s), agreement(s) and contract(s) to pay for subject materials, knowing that such material misrepresentations were false when made, and which were intended to be acted upon by the Plaintiffs, or were recklessly made so as to induce the Plaintiffs to act, and which were in fact reasonably and justifiably relied upon by the Plaintiffs, to the financial injury and detriment of the Plaintiffs.  As a result of Defendants' intentional fraud, misrepresentation and conduct, Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

102.  **Count 9 - Action for Fraud by Nondisclosure.**  In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action for Fraud by Nondisclosure on the basis that Defendants concealed and/or failed to disclose that they would not be keeping their promise(s), agreement(s) and contract(s) to pay for subject materials, even though Defendants had a duty to disclose said material information to the Plaintiffs, such that by deliberately remaining silent, and/or failing to disclose said material information, Defendants intended for Plaintiffs to act without the information material to their transaction(s), to the financial injury and detrimental reliance of the Plaintiffs.  As a result of Defendants' intentional fraud by nondisclosure, Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

103.  **Count 10 - Action for Appropriation by Theft.**  In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action for Appropriation by Theft on the basis that Defendants engaged in unlawful appropriation of property by theft, by failing and/or refusing to return to the Plaintiffs the materials in question, thereby intending to deprive the

Plaintiffs of their property, and acquiring and exercising control over said materials, without the effective consent of the Plaintiffs. As a result of Defendants' appropriation of property by theft, Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

104. **Count 11 - Action for Theft by Bad Check(s).** In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action for Theft by Check(s) on the basis that Defendants obtained the property of the Plaintiffs by issuing and/or passing subject check(s) for the payment of money, when Defendants' did not have sufficient funds in or on deposit with their bank(s) and/or other drawee(s), necessary for the payment in full of subject check(s). As a result of Defendants' appropriation of property by theft by check(s), Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

105. **Count 12 - Action on Bad Check(s) As Note(s).** In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action on Bad Check(s) as Note(s) on the basis that Defendants defaulted in the payment of check(s), executed as note(s), and delivered to the Plaintiffs by the Defendants, with Defendants as makers on the notes(s), therein providing Plaintiffs with the contractual and commercial right to collect on said note(s), as owner and holder of said note(s), and as direct party beneficiary of said note(s) as written contracts, in sum certain, but because said note(s) and written contract(s) are still due and unpaid by the Defendants, are thereby in full maturity and in default, due to the breach and default of the Defendants. As a result of Defendants' bad check(s) as note(s) and written contract(s), Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

106.   **Count 13 - Action on Guaranty.**  In the alternative, and in addition to the foregoing count(s), Plaintiffs file this Action on Guaranty on the basis that Defendants defaulted in the payment of check(s), executed as note(s), and delivered to the Plaintiffs by the Defendants, with the individual Defendant herein as unconditional Guarantor on the notes(s), therein providing Plaintiffs with the contractual and commercial right to collect on said note(s), as owner and holder of said note(s), and as direct party beneficiary of said note(s) as written contracts, in sum certain, but because said note(s) and written contract(s) are still due and unpaid by the Defendants, are thereby in full maturity and in default, due to the breach and default of the Defendants.  As a result of Defendants' unconditional Guarantee on the bad check(s) as note(s) and written contract(s), Plaintiffs have suffered monetary damage in the amount of **$28,243.66**, not including interest or attorneys' fees and costs, as directly and proximately caused by the Defendants.

## J.   DAMAGES

107.   **Actual Damages.**  Plaintiffs' claim herein seeks full and complete payment for the outstanding debt owed by the Defendants in the amount of **$28,243.66,** as compensatory damages for the actual economic and pecuniary loss of the materials furnished and delivered to the Defendants, pursuant to the promise(s), agreement(s) and contract(s) to pay that were made by the Defendants, in accordance with Chapter 2 of the Texas Business & Commerce Code, "Sales".

108.   **Common Law Damages.**  The Plaintiffs' claim herein further seeks Compensatory Damages, Reliance Damages, and Special Damages, under the common law of the State of Texas.

109.    **Exemplary Damages**.  The Plaintiffs' claim herein further seeks exemplary damages, awarded as a penalty or by way of punishment, for Defendants' fraud, malice, and/or willful or grossly negligent theft and conversion of property, and in connection with the purchase and/or sale of property, in accordance with the Texas Civil Practice and Remedies Code Chapter 41, "Damages".

110.    **Punitive Damages.**    The Plaintiffs' claim herein further seeks common law punitive damages, awarded as a penalty or by way of punishment, for Defendants' fraud, malice, and/or the willful or grossly negligent theft and conversion of property, in accordance with the common law of the State of Texas.

111.    **Theft Liability Damages.**  The Plaintiffs' claim herein further seeks damages awarded by the trier of fact, due to the unlawful appropriation of property, resulting by the theft and unlawful conversion of property by the Defendants, and/or by the theft by check(s) by the Defendants, in accordance with the Texas Civil Practice and Remedies Code Chapter 134, "Texas Theft Liability Damages".

112.    **Unliquidated Damages.**  The Plaintiffs' claim herein further seeks unliquidated damages in the amount of at least **$28,243.66**, not including attorneys' fees and costs, which is within the jurisdictional limits of this court.

113.    **Attorneys' Fees and Costs.**  The Plaintiffs' claim herein further seeks full and complete payment for all the reasonable attorneys' fees and costs incurred to date, in accordance with the Texas Civil Practice & Remedies Code Chapter 38, "Attorneys Fees", and the Texas Civil Practice and Remedies Code Chapter 134, "Texas Theft Liability Damages".

114. **Texas Prompt Payment Act Interest.** The Plaintiffs' claim herein further seeks full and complete payment of interest, in accordance with the Texas Property Code Chapter 28, "Prompt Payment To Contractors And Subcontractors".

115. **Pre-Judgment Interest.** The Plaintiffs' claim herein further seeks full and complete payment of interest for any damages that occurred before Judgment.

116. **Post-Judgment Interest.** The Plaintiffs' claim herein further seeks full and complete payment of interest on any Judgment issued herein, from the date of Judgment until fully satisfied.

117. **Other Relief.** The Plaintiffs' claim herein further seeks any and all other relief to which Plaintiffs are entitled, both at law and in equity, including but not limited to attachment, sequestration, garnishment, liens, receivership, and/or injunction.

## K.    CONDITIONS PRECEDENT

118.    All conditions precedent have been performed or have occurred.

## L.    PRAYER FOR RELIEF

119.    WHEREFORE, ALL PREMISES CONSIDERED, and for the foregoing reasons, Plaintiffs herein request and pray that Defendants be cited to appear and answer herein, and that after final trial on this matter, Plaintiffs be awarded the following relief upon entry of Judgment against the Defendants, jointly and severally, to wit:

a.    Denial of Debtors' discharge under Title 11 of the United States Code;

b.      Determination of subject outstanding debt of **$28,243.66** owed by the Defendants to the Plaintiffs as non-dischargeable;

c.      Payment of **$28,243.66** by the Defendants to the Plaintiffs as actual damages;

d.      Payment by the Defendants to the Plaintiffs of Compensatory damages;

e.      Payment by the Defendants to the Plaintiffs of Exemplary Damages;

f.      Payment by the Defendants to the Plaintiffs of Punitive Damages;

g.      Payment by the Defendants to the Plaintiffs of Reliance Damages;

h.      Payment by the Defendants to the Plaintiffs of Special Damages;

i.      Payment by the Defendants to the Plaintiffs of Theft Liability Damages;

j.      Payment by the Defendants to the Plaintiffs of Unliquidated Damages;

k.      Payment by the Defendants to the Plaintiffs of Treble Damages;

l.      Payment by the Defendants to the Plaintiffs of reasonable attorney's fees incurred to date by the Plaintiffs, with additional contingent amounts in the event of appellate proceedings;

m.      Payment by the Defendants to the Plaintiffs for all costs of suit;

n.      Payment by the Defendants to the Plaintiffs of Prompt Payment Act Interest at the highest legal or contractual rate allowed by law;

o.      Payment by the Defendants to the Plaintiffs of Pre-judgment interest thereon at the highest legal or contractual rate allowed by law;

p.      Payment by the Defendants to the Plaintiffs of Post-judgment interest thereon at the highest legal or contractual rate allowed by law;

q.      Any and all other further relief to which Plaintiffs may be entitled, including but not

limited to attachment, sequestration, garnishment, liens, receivership, and/or

injunction; and,

r.      Any and all other further relief to which Plaintiffs may be entitled, both at law and in

equity, which the Court deems appropriate, whether pled or unpled.


                                        Respectfully submitted,

                                        THE LAW OFFICES OF MICHAEL R. NEVAREZ
                                        A Professional Corporation
                                        P.O. Box 920786
                                        El Paso, Texas  79902-0014
                                        Telephone: (915) 603-1882
                                        Facsimile:  (915) 538-7413
                                        Email: MRN@MRN4Law.com


October 18, 2010                        /s/ Michael R. Nevarez
                                        By: MICHAEL R. NEVAREZ
                                        State of Texas Bar No. 14933400

                                        Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that a true and correct copy of the foregoing **Original Complaint To Determine Dischargeability Of Debt, To Object To Discharge, And To Recover Damages** was served either by electronic means as listed on the Court's ECF noticing system, or by regular first class mail, postage prepaid, to the following parties in interest, on or before October 18, 2010:

<u>DEBTOR:</u>
IDIN SAFABAKHSH
3433 TOUCHSTONE PL
EL PASO, TX 79936

<u>DEBTOR'S ATTORNEY:</u>
J. TODD SOUTHERN
5601 MONTANA AVE.
STE A
EL PASO, TX 79925

<u>TRUSTEE:</u>
STUART C. COX
1760 N. LEE TREVINO DRIVE
EL PASO, TX 79936

     Respectfully submitted,

The Law Offices of Michael R. Nevarez
A Professional Corporation
P.O. Box 920786
El Paso, Texas  79902
Telephone: (915) 603-1882
Facsimile:  (915) 538-7413
Email: MRN@MRN4Law.com

October 18, 2010

/s/ Michael R. Nevarez
By: MICHAEL R. NEVAREZ
State of Texas Bar No. 14933400

Attorney for Plaintiffs

---

Plaintiffs' Original Complaint – Safabakhsh and Guzman
Case # 10-31410-LMC

# Plaintiffs' Exhibit A

*(HTTN? CARRY)*

# La Tierra Interiors Solid Surface, LLC.

# Invoice

Solid Surface Fabrication and Installation

P.O. Box 1178 – Bernalillo, New Mexico 87004 – (505) 867-0796 – FAX (505) 867-9469

| Date | Invoice # |
|---|---|
| 3/22/2007 | 1116 |

**Bill To**

World of Flooring
7200 Gateway East Ste A
El Paso, Texas 79915

| P.O. No. | Project | Rep |
|---|---|---|
| SHOWROOM | TRUCKLOAD 3/22/... | |

| Description | Qty | Rate | Amount |
|---|---|---|---|
| 1 SLAB OF 3CM DELIRIUS<br>SLAB SIZE 118 X 75 | 61.45 | 18.82 | 1,156.49 |
| 1 SLAB OF 3CM COPPER CANYON<br>SLAB SIZE 111 X 72 | 55.5 | 21.66 | 1,202.13 |
| 1 SLAB OF 3CM JUP. DELICATUS<br>SLAB SIZE 117 X 68 | 55.25 | 18.23 | 1,007.21 |
| 1 SLAB OF 3CM JUP. MARFIRA<br>SLAB SIZE 117 X 72 | 58.5 | 19.58 | 1,145.43 |
| 1 SLAB OF 3CM SIENNA<br>SLAB SIZE 113 X 72 | 56.5 | 19.63 | 1,109.10 |
| 1 SLAB OF 2CM AURORA BOREALIS<br>SLAB SIZE 116 X 69 | 55.58 | 18.36 | 1,020.45 |
| 1 SLAB OF 3CM MADERA BRAZIL<br>SLAB SIZE 117 X 76 | 61.75 | 14.18 | 875.62 |
| 1 SLAB OF 3CM LAPIDUS<br>SLAB SIZE 110 X 69 | 52.7 | 18.84 | 992.87 |
| 1 SLAB OF 3CM JURRASIC GOLD<br>SLAB SIZE 113 X 64 | 50.22 | 19.76 | 992.35 |
| 1 SLAB OF 3CM MANHATTAN GREEN<br>SLAB SIZE 106 X 74 | 54.47 | 20.32 | 1,106.83 |

| Total | |
|---|---|
| Payments/Credits | |
| Balance Due | |

# Invoice

| Date | Invoice # |
|---|---|
| 3/22/2007 | 1116 |

**Bill To**

World of Flooring
7200 Gateway East Ste A
El Paso, Texas 79915

| P.O. No. | Project | Rep |
|---|---|---|
| | TRUCKLOAD 3/22/... | |

| Description | Qty | Rate | Amount |
|---|---|---|---|
| 1 SLAB OF 3CM ORO NAPOLEONE SLAB SIZE 114 X 70 | 55.41 | 12.65 | 700.94 |
| 1 SLAB OF 3CM KEY WEST GOLD SLAB SIZE 116 X 80 | 64.44 | 13.63 | 878.32 |

| | |
|---|---|
| **Total** | $12,187.74 |
| **Payments/Credits** | $0.00 |
| **Balance Due** | $12,187.74 |